Racetech, LLC v. Kentucky Downs, LLC Now, Counsel, you should be aware I'm still a member of the Nevada Bar. I'll be gentle. Mr. Brophy? Yes, sir. And you are reserved five. Please, thank you. Go ahead, please. Good morning, and may it please the court. I'm here representing Racetech. Racetech is the owner of three patents that relate to methods and systems for what we're calling parimutuel wagering on historic racing. And I'd like to start with just a little overview of what that actually is. You can rely on ultramershal in here as opposed to ultramershal two. Parimutuel law is how you can do that. Perhaps we shouldn't have. Is there a particular point that we relied on that you're having a concern with, Your Honor? Sure, if you want me to. Please. Page 10 of your brief, you say dismissal is only appropriate for well-pleaded allegations in a complaint construed in the light most favorable to the plaintiff. Suffice to establish the defense. And you cite ultramershal and then say vacated on other grounds. The Supreme Court vacated ultramershal and remanded it to this court in light of Alice. This court then issued ultramershal, the Hulu 772F3709, ultramershal two. Nowhere in ultramershal two does this court discuss the issue of presumed validity requiring clear and convincing evidence under 101 analysis. That is a fair point, Your Honor. Thank you. That was not an intent to mislead the court in any way, shape, or form. Oh, you didn't. Okay, excellent. On the other hand, you miscited. That's fair, Your Honor. That's fair. And I think, I'll be honest, one of the questions that we had coming into today is what exactly the standard is for review at this point, at the Rule 12. I think both parties here have stated in their briefing that it's a clear and convincing standard. I know there's been some disagreement about that at the Rule 12 stage, and so I think that's one issue that I certainly had a question about. And I think that's, if I understand your question correctly, I think that's something that you're pointing out to me. So I guess just getting back to kind of the overview, the way this technology works is a patron will come into a wagering establishment and will be presented with information, anonymized information, about a historic race, let's say a horse race, what the horses weigh, what the track conditions are, and so forth. The patron will then place a wager based on what he or she believes is the right outcome. Then the outcome will be revealed, and in our invention, it's through a video replay of the actual event to determine whether that wager was a good one or a bad one and whether that patron will receive money or not. There are some basic components that comprise this system. There is a game server that houses anonymous information about the race. That's a computer, right? It is a computer, yes, at its core. It controls wagering activity, it calculates and manages payouts, and so forth. You're not claiming any of that, though, right? I mean, that's a parimutuel system. You're not claiming that you invented parimutuel wagering? No, Your Honor. No, we are not. I think there's a different question as to whether anyone has ever had the idea of conducting parimutuel wagering on past events. That is the key idea that your client had here. That's correct, Your Honor. Everything else is conventional. I wouldn't say that everything else is conventional. The reason I say that is it's not just the idea of parimutuel wagering on a past, a historic race that is an idea, a new idea, but it's also the methods and systems that are implemented to enjoy that idea. So I would submit that the combination of a game server, as described in the patent, with a video server, as described in the patent, with gaming terminals, as are described in the patent. What's the specific technology in the claims that's different for past races versus current races? There is, I think, a huge difference, and the reason I say that is there really isn't any technology that relates to parimutuel wagering on current live races because all you need to do is watch the race happen and collect your money. The entire technological infrastructure that is claimed in this patent, these patents, relates to the particular elements that are required to allow that past race to be used as the engine that drives the parimutuel wagering activity. Just out of idle curiosity. Yes, Your Honor. What happens when I develop a program into which I feed track length, conditions, number of horses, weight, jockey weight, and so on, and it spits out what race that was in the past, and then I place my bet based on the outcome? I think the information that is provided is so anonymous. There are so many races, and the information is so discreet that it's darn near impossible for you to have that kind of table where you can cross-reference and find the actual answer. That's the point of having this database of races is that it's so large you can't know the outcome. So I guess the big point here, and you've read the briefs, you understand the technology, this is not a case in which an idea existed, like Alice, where an idea existed and we said do it on a computer. That's not this case. No one had the idea of parimutuel wagering on a past event before, and the systems that we've claimed in our patent are specifically designed to make use of that new idea. So we have a new idea, and we have new hardware componentry and software configured to implement that idea. I think that's the key distinction between cases like Alice and what we're talking about here today. I'm puzzled by what you think is new to implement the idea, except that you look at a past race for results rather than a current race. I mean, you're still using basic parimutuel wagering systems, right? The parimutuel wagering system that is implemented in the embodiments taught in the patent are slightly different, and I'll admit I don't have a technical background in parimutuel wagering, but my understanding of it is that given the nature of the invention, the instance... I mean, here's the problem. You're going to start saying things that aren't in the claims. I mean, if we look at Claim 8, I don't know if you think Claim 8 is representative, but it certainly seems like one of the basic ones. Where does it suggest that the parimutuel wagering system you use is any different from the same parimutuel wagering system that is used in thousands of racetracks across the country? I'm sorry, Your Honor. Are you referring to Claim 8 in the 887 patent? 737. Oh, okay. I mean, if you want to point me to a different claim, that's fine. I didn't see anything that described parimutuel wagering in any different way. I think some exemplary claims would be Claims 9 and 17 of the 887 patent. That's Appendix 50 and 51 in the record. And to answer your specific question, to conduct a parimutuel wagering game using live events, you need none of what is in these claims. And I'll explain that. You can literally show up to a racetrack— But have people used what's in these claims previously? Even if you could show up and use it with people, you can go to a computer terminal. I feel as if your argument is presuming that there isn't parimutuel wagering on current events on a computer system. I understand. I think there is. And you're right. There are computerized systems that enable parimutuel wagering on live events. You mean it's been going on for decades? Yes. If you go to a racetrack, you can sit down and bet on races going on all over the country. That's correct. That's exactly right. The difference between those technologies and what we have claimed here— and by the way, the patent talks about plugging into those, allowing this new system to also operate as one of those— is that those older systems do nothing but display the possible races on which you can wager and allows you to place that wager. This system adds a whole host of new elements, which includes presenting anonymized information, which didn't exist and doesn't exist with live racing, showing video of the results, which doesn't exist and didn't exist with respect to live wagering. What do you mean? Of course it did. I mean, that's what they're doing. They're sitting there watching the race and seeing who wins. Well, that's a live feed from a racetrack. Well, that's what we're getting back to, though. It seems to me that the only thing you keep saying that's new is it presents results from an old race. I would say—and I don't want to give short shrift to all the claim language because there's a lot here— but I would say two things that are exemplary. One is the need for a system that houses and shows anonymized information about a race. That is new. That is not required to do live parimutuel wagering because there's no need to anonymize anything because there's nothing to anonymize. The race hasn't taken place yet. So that's one thing. The other thing is a video server that houses historic video that is then played to the patron. That's another thing that to conduct live racing not only didn't exist but can't exist because you can't store a video of a race before it actually happens. And so those are elements that are necessary to enable this historic wagering. You think that there were no video servers that stored race tapes? I mean, that's what you're saying. And you may not be showing the whole race, I understand. I think some of them just show the last few seconds. That's correct. But you're showing video footage from an actual race. That's correct. That's correct. I mean, where'd you get that video footage from? Well, the video footage is recorded simulcast video, so it's the live video recorded and stored. Right. I mean, you can go onto any number of websites and go back and look at any historic race since they've been recording them for years. My dad does it all the time. Okay. There's nothing new about showing video of old races. And I don't think that's our contention, Your Honor. And I understand that I'm into my rebuttal time. If I could continue for just a moment. Two things. One, although I agree that, of course, the concept of a computer that stores a video that can replay a video is nothing new, and we're not claiming that that's our invention. I will say that other elements of these claims, for example, the gaming server and the types of information it has to store and feed to a gaming terminal, that is new because that hasn't been done before. I think the video server is particularly susceptible to concluding that nothing's new because of what it is. But the other components are new. And there's no evidence in the record at all that those components have ever existed before. Remember Rule 12 here. On top of that, we also have to look. We have to step back and look at the combination of those elements, the game server combined with the gaming terminal. When you say those components are new, I don't want to eat up too much of your time, but what you're saying is these are generic computers that are programmed in new ways. You didn't invent a new gaming server, right? We didn't invent a micro— You're using off-the-shelf computer equipment. That's correct, Your Honor. For the most part, we're using off-the-shelf computer equipment. But just like the Baskin case, for example, just because we're using off-the-shelf computer equipment doesn't mean that we can't have an invention. And we're not claiming that we invented the Dell computers, that one of the things we say you can go out and buy. We're saying that— Here's the issue is you're saying your gaming server is new. Where in these claims, beyond just saying gaming server, does it describe in detail what that gaming server does? The dependent claims I would give you as an example provide information about the role that the gaming server plays, the types of information that it stores, the databases, what information it feeds into the gaming terminal. So there's— I mean, if you're relying on types of information, how is information passable? We're not relying on the information. It's the role of those— Each component has very specific roles, and those components have all been combined in these claims to perform a new function that has never been claimed before. I'll reserve the remainder of my time. Thank you. May it please the Court, my name is Spiro Barovoskos. I represent Xacta, formerly known as Encore. Kentucky Downs Council has left me to do the arguing, so I'll be arguing the appeal. Let's start—we'd like to start with claims 61 through 71 that kind of got us started in this process. Claims 61 through 71 say nothing about video servers. In which patent? I'm sorry? In which patent? Those are in the 887, Your Honor. If you look at claims 61 through 71, they are completely abstract descriptions. For example, 61 says receiving money from a player to establish a credit balance, randomly selecting a historical gaming event, receiving player winner selections, and determining payout to player based on results of historical gaming event and player selection. While it's not in the record, I think I may have done that with my friends on occasion when we talked about, hey, who won, you know, the 1956 World Series or something, and let's bet on it, and then let's look it up on Google or something. But clearly claims 61 through 71 have none of this computer stuff, no video servers, nothing of that. So we wanted to start there, because one of the things they complained about in their reply is we didn't talk about the claim. So let me talk about the claim. 61 through 71 has nothing in it that, I'm sorry, not 71. I misspoke. 61 through 70 are the claims that have no processing whatsoever. Why don't you address the ones that your colleague said and provide some patentable ideas for them? Absolutely, Your Honor. And there I'll turn to, again, in the 887. Claim 1, for example. In there it says very generically, well, in actuality, if you look at the claim, if you take the preamble out, you're left with nothing. You're left with a video server comprising a database having video images of gaming events stored therein, which exists. You're left with a game server comprising a computer system, which doesn't tell you anything. And you're left with a plurality of terminals, said video server and plurality of terminals communicatively coupled to said game server. What do I have when I put all those pieces together, the video server, the game server, and the terminals? I don't know. I have to go look at the preamble to find out if there's any invention. And the preamble says, a system for paramutual wagering on actual past events. So that's the only thing in Claim 1 that arguably could be argued to be new. And that's an abstract idea, as shown by this court's decisions in cases like Planet Bingo and in Ray Smith. So Claim 1 has nothing in it. As I descend through the claims, you get to, for example, Claim 6, a system in accordance with Claim 5, wherein each said game terminal comprises, and it talks about a user interface, cash acceptor, a printer, a document reader, a sound card, a credit and debit card reader. Well, that's all conventional stuff you'll find on gaming machines that have been around for a long time, if you go to Las Vegas and look around. I mean, that is not new technology. In fact, that's the entire problem with this patent, is that they came up with the idea of, look, people are going to the gaming parlors, they're going to the racetracks, they're betting on simulcasts, they put their money into a machine, they pick the winner, and then they watch the race, and then they get paid or they lose. And they said, you know what, let's change the video to a historical race. And there's nothing about anonymizing in the claims. I have not found any discretion in any of these claims where it says, do it on an anonymous basis. But in any event, that system existed. And the only shift they made, there was no technological impediment. All the cases where this court has said... So why isn't the idea of doing it on old races that have already been run a new idea? Why isn't that a patentable distinction? Because that idea is abstract, just as abstract as, for example, the idea that was rejected in Ray Smith, where the person came up with a blackjack game, and they had that one twist in the blackjack game where if the cards added up to 10, then something else happened than what normally happens in a casino in blackjack. But this court said in Ray Smith, no, this is abstract. You need to have the something more. And wagering is the type of financial activity, just like in Alice. I mean, one could argue that investment is nothing but wagering by a different name. And the cases that do risk analysis and what have you, like Alice and like Pilsky, were rejected by the Supreme Court as being the types of abstract ideas that are not eligible for patent. And it's the same type of thing. I mean, we could spend a lot of time and money for me to go out and try to find prior art where somebody had bet on an old sporting event. I probably would find it pretty easily. I bet you a white horse has never won a Kentucky Derby. In answer to one of your questions, Your Honor, I know in blackjack you can kind of game the system by counting the cards. And so that was kind of where you were going. I was talking about something called happy toes, in which computer shoes were developed in which the card counter would tap the numbers in. Right. It was a very early technology. Right. Well, you could with these machines theoretically go out. And if you spent a little bit of time, and it's scary to our clients that somebody goes out and with a little bit of time accesses the database, and you probably won't get all the races that are in our machine, but you might get a substantial number. And if you sit there at the terminal with your little computer, and you say, OK, here is the data I'm given. Tell me which race this was. You might be able to pull that off. I think what would happen is the same thing that happens in Las Vegas. You would have a very courteous security guard come over and say, excuse me, ma'am, you can't play in this game any longer. So that's, I think, the answer to that question. And like I said, people who cheat for a living spend an awful lot more time developing their systems than the money they make by and large. Well, there are systems by which even in Las Vegas you can go after slot machines if you know what you're doing. So this game, yes, would be susceptible to that, especially since the data is historic data. I think the way you deal with that, though, is you ask the patron to leave. Because I don't think anybody has the mental capacity, with the possible exception of maybe Rain Man, to do this mentally. He would need a computer. I'll give you an example of betting on a historical race. The State. That's what that movie is really all about. If you remember, they're trying to get him... They say, we know how the race turned out, and bet on it. So there's a well-known example of betting on a historical race. So, the only thing I'm going to emphasize is there was no technological impediment. There's no new technology here. There was no use of algorithms to solve some technological problem. It's simply, how do we get people... The way we do it is we just show them the old race and say, you can bet on it. It didn't require any technology to accomplish that. As the judge found, you put in the VCR, instead of the live feed of the simulcast race, you put in a VCR tape of the old race. And we don't think that's an invention, neither did Judge Stivers, and I don't think the Supreme Court would either, under the Alice and Bilski decisions. If there's nothing further, I'll sit down. Thank you, counsel. Thank you. I think the problem we have here is a gross oversimplification of the claims. The things that my colleague just mentioned ignores all of the actual limitations in the claims. He said he doesn't see anything in there that relates to anonymized data. It's in Claim 9, where it's referencing a menu that shows historical racing data. We have not done a claim construction. We don't know what these terms mean, other than whatever the defendant wants to craft for purposes of one-on-one arguments. And I guarantee if we were to do claim construction... Claim 9 in what? Claim 9 of the 887 patent, Your Honor, refers to displaying a winner's selection menu and historical racing data. That is the anonymized data. Of course, that's my... Where does it say anonymous? Well, that's part of the problem, Your Honor. If we were to do a claim construction, it would likely be construed that way. But we haven't done that yet, and that's part of the problem here. Similarly, we have not developed any facts. You heard my colleague say, that's something I did with my friends, or go to Vegas and look around. That's not in the record. The record is a Rule 12 record, and the only thing in the record is the specification saying this invention is new and no one's ever done it before, and there is zero evidence to refute that. So how can we invalidate these claims without claim construction, without truly looking at representative claims? Counsel's happy to point about claim 61. Isn't that the whole point of Alice in these cases, that you may come up with a new way of using an abstract idea with a computer, it still doesn't make it patent-eligible. It may even be a new idea of using a computer that can make money, but it doesn't make it patent-eligible. I think the way I would answer that, Your Honor, is to say Alice is all about saying we're not going to let you, by saying do it on a computer, capture something that is old and well-known. What Alice doesn't stand for, and what cases like DDR and Bascom and others stand for, is the possibility that someone can come up with something new, and just because you're using a computer to implement it doesn't mean that it's not inventive. You can still get a patent if you can show that that thing has never been done before. I don't think it's enough that it's the thing hasn't been done before. The question is, is there some technological improvement outside of the abstract idea that provides the something more in step two under Alice? I guess I'm running out of time. My answer would be I agree, but it doesn't need to be a solution to make the computer better. The computer can be used to make some other technological field like electronic gaming better, and that's what this invention is directed to, using computers to make electronic gaming better. That's where the idea is. Any questions? Thank you very much.